PROCTOR, Respondent, vs. FIRST NATIONAL BANK OF VIROQUA, Appellant.

*September 15—October 11, 1927.*

*Banks: Assessment to repair impaired capital: Rights of stockholders in doubtful assets replaced.*

The stockholders of a national bank who paid assessments on their stock to make good the impairment of capital because of bad, doubtful, and unproductive assets, which remained under the control of the bank, were not entitled either at law or in equity to the proceeds of the questioned assets on a subsequent sale, in the absence of some special arrangement therefor.

APPEAL from an order of the circuit court for Vernon county: R. S. COWIE, Circuit Judge. *Reversed.*

Demurrer. The complaint alleges the corporate character of the defendant bank and that in the month of June, 1916, the plaintiff was the owner of 250 shares of the stock of said banking corporation of the par value of $100 per share; that in the month of June, 1916, the comptroller of the currency caused an examination to be made of the defendant bank and made an order requiring the defendant bank to remove from its assets certain securities, among which were the bonds of the Seaboard Logging Company and divers other securities, all of the par value of $15,000.

"Fourth. That during the month of June, 1916, pursuant to and in compliance with the order of the said comptroller

of the currency, the said defendant did take from its assets the securities so listed and ordered to be taken therefrom by said comptroller of the currency to the amount of $15,000."

That in order to make good such impairment of its assets defendant levied an assessment of thirty per cent. upon the par value of its stock; that plaintiff and all other stockholders paid such assessment, the plaintiff paying the sum of $7,500.

"Seventh. That by virtue of said payments made by said stockholders in the said banking corporation defendant herein, the aforesaid securities, the par value of which amounted to the said sum of $15,000, became the property of said stockholders of record on the books of the defendant corporation at the time of such payment, and the same should have been delivered to said stockholders at the time of such payment.

"Eighth. That all of said securities so removed from the assets of the defendant banking corporation were retained by said defendant."

That in January, 1917, the plaintiff sold the 250 shares of which he was the owner; that he is now the owner of ten shares of the capital stock of said bank.

The complaint further alleges that plaintiff is informed and believes that the defendant bank has collected and received payment in full on account of the securities listed by the comptroller, the last payment being made on the 15th day of October, 1925.

"Eleventh. That by reason of said recoupments the said defendant banking corporation is now indebted to its said stockholders so paying said assessments in the amount so recovered by payment of said securities so removed from the assets of the defendant banking corporation, and to this plaintiff in the sum of $7,500, together with interest."

That demand has been made for an accounting, settlement, and payment, which has been refused.

The defendant demurred upon three grounds: (1st) that the complaint did not state facts sufficient to constitute a

cause of action; (2d) that the action is not begun within the time limited by law; and (3d) that there is a defect of parties plaintiff. From the order overruling the demurrer the defendant appeals.

For the appellant there was a brief by *Graves & Gulbrandsen* of Viroqua, and oral argument by *C. W. Graves*.

*H. P. Proctor, Jr.,* of Viroqua, for the respondent.

ROSENBERRY, J. In order to determine the question at issue, that is whether the plaintiff can recover his proportionate share of the recoupments made by the bank on account of the assets set aside in 1916, some of the allegations of the complaint must be first construed.

It is alleged that the defendant did take from its assets the securities listed by the comptroller and that the assessment of $15,000 was levied "with which to purchase from the said banking corporation the securities so ordered removed from its assets," which seems to be in direct conflict with the eighth allegation, which is "that all of said securities so removed from the assets of the defendant banking corporation were retained by said defendant."

If we were to apply to the full extent the rule that pleadings are to be most strongly construed in favor of the pleader, it might be considered that there was an actual removal of the assets alleged. That conclusion is, however, inconsistent with the other allegations to the effect that these securities were retained, and upon oral argument it was conceded that no more was done in fact or intended to be alleged than that the doubtful assets were passed into a suspended account and remained under the control of the bank thereafter as they had theretofore and were not considered an asset in ascertaining the bank's solvency.

The question then arises whether the payment of the assessment gave the plaintiff any right in the event the assets found bad and doubtful by the comptroller were realized upon at a later time by the bank. The plaintiff relies prin-

cipally upon the case of *Jerome v. Cogswell,* 204 U. S. 1, 27 Sup. Ct. 241. It was there held that—

"The stockholders of record at the time of the reduction of the capital stock of a national bank, and not those of record at the time of the expiration of its charter, are entitled to the proceeds of the bad and doubtful assets set apart at the time of such reduction in compliance with the requirement of the comptroller of the currency that such assets should be charged off or set aside for the benefit of those who were then stockholders, the bank, after such reduction, being left with its capital stock, as reduced, unimpaired, and a surplus exclusive of the assets in question."

The facts in that case, however, show that it has no application to the facts in this case. There it was proposed to reduce the capital stock in the amount of $100,000, and the consent of the comptroller was given upon the condition that "so much of the amount as is necessary be used to charge off bad, doubtful, and unproductive assets, the difference only being paid to the shareholders in cash," and that the comptroller further ordered: "The assets belong to the stockholders of record, and a trust fund must be created, so that those assets may be distributed among the stockholders of record when your capital is reduced."

The order of the comptroller was carried out, and it was held that upon the dissolution of the bank, stockholders of record at the time the capital was reduced and not the stockholders of record at the time of dissolution were entitled to receive the proceeds of the charged-off accounts.

We find no authority for the proposition that where a national bank levies an assessment to make good an impairment of its capital due to bad or doubtful loans that by the mere payment of the assessment and operation of law the stockholders have any interest in the bad or doubtful items where they are not set apart and the bank continues to hold them and proceeds to realize upon them. The bad and doubtful assets not having been trusteed or in any way set

aside except by operation of law, the plaintiff has no right of action against the defendant. *McCann v. First Nat. Bank,* 112 Ind. 354, 14 N. E. 251. The same case was reconsidered upon an amended complaint in 131 Ind. 95, 30 N. E. 893.

There is nothing to show that the comptroller regarded the bad or doubtful items as entirely worthless, and it is a matter of common knowledge that not infrequently considerable revenues are made from such items and that they therefore have potential value which may well have been taken into account by the comptroller in making his order. If the stockholders wish to produce the legal consequences now contended for, they might have formed a pool and purchased the bad and doubtful items and so restored the bank's capital. They did nothing to earmark the bad and doubtful assets as a trust fund or to indicate that the then stockholders had any interest therein. In the absence of some such arrangement as exhibited in the case referred to, it is considered that a stockholder paying an assessment to make good an impairment of capital acquires no interest in bad and doubtful items that can be successfully asserted either at law or in equity.

*By the Court.*—The order appealed from is reversed, and the cause remanded with directions to dismiss the complaint.