E. H. LUIKART, RECEIVER, ET AL., APPELLEES, V. W. A. WELLS ET AL., APPELLANTS.

FILED JANUARY 10, 1936. No. 29411.

*James E. Bednar* and *John A. McKenzie,* for appellants.

*F. C. Radke, S. L. Winters* and *Barlow Nye, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

CARTER, J.

This is an equity suit brought in Douglas county by E. H. Luikart, as receiver of the insolvent South Omaha State Bank, against the defendants W. A. Wells and Clara B. Wells to obtain the cancelation of two deeds to certain property claimed by defendants and to have the title to the same quieted in the receiver. The trial court entered an order canceling the deeds and quieting the title as prayed. From the overruling of their motion for a new trial, the defendants have brought the case to this court on appeal.

The evidence shows that on November 12, 1924, the Robert Parks Plumbing & Heating Company executed and delivered a mortgage on the property in question herein to the Security State Bank of Omaha for $9,000, subject to a mortgage of $3,500 held by the Omaha Loan & Building Association. On December 23, 1926, the Security State Bank obtained title to the property by foreclosure. On December 30, 1926, the South Omaha State Bank paid off the mortgage held by the Omaha Loan & Building Association by cashier's check in the amount of $3,673.30. The record further shows that on March 23, 1927, the Security State Bank deeded the property to Thomas F. Higgins for a consideration of $5,750, and took back a mortgage of $4,750 dated March 24, 1927, payable to the South Omaha

State Bank. On March 30, 1929, Higgins deeded the property, which we will hereafter designate the Higgins property for convenience, to the South Omaha State Bank, and on May 16, 1929, the South Omaha State Bank released the mortgage that Higgins had given the bank. On December 31, 1929, the South Omaha State Bank deeded the property to Daphne S. McGurk for a consideration of one dollar. On January 18, 1930, Daphne S. McGurk and her husband, John S. McGurk, deeded the property to the defendants W. A. Wells and Clara B. Wells for a consideration of one dollar. The two deeds last above mentioned are the ones that the receiver of the South Omaha State Bank asks to have canceled.

The record further shows that prior to September 7, 1926, the Security State Bank became insolvent and was reorganized under the name of the South Omaha State Bank. On September 7, 1926, the reorganized Security State Bank, which name was subsequently changed to the South Omaha State Bank, purchased assets of the insolvent Security State Bank of the face value of $181,502.37 for the sum of $89,430, the Robert Parks Plumbing & Heating Company note and mortgage being included therein at a value of $1,250 over and above the mortgage of the Omaha Loan & Building Association. The evidence shows that the department of trade and commerce refused to permit the South Omaha State Bank to place these assets in the new bank at their face value, but did permit them to be carried as assets at an amount equal to their purchase price. The directors of the bank thereupon signed a note for the amount of $89,430 and placed it in the bank's note case. As returns came in on the assets purchased from the receiver of the Security State Bank, the amounts thereof were credited on the directors' note until it was paid in full. The proceeds in excess of the directors' note were carried in a fund denominated the "John S. McGurk, Trustee" account. It is the contention of defendants that the $181,502.37 worth of assets purchased of the Security State Bank were the property of the stockholders and not of the South

Omaha State Bank, and that they were placed in the bank as "collateral assets" to the directors' note of $89,430. It is further the contention of defendants that, upon the payment of the $89,430, the assets remaining were the property of the stockholders.

The record shows that all of the $181,502.37 of assets purchased of the receiver of the Security State Bank were registered for their face value on the books of the South Omaha State Bank, although their source as an asset in the bank was shown. The record further shows that the sale of these assets was made to the reorganized Security State Bank which later became the South Omaha State Bank. The amount collected therefrom was carried in the John S. McGurk trustee account, which was carried as an asset of the bank. The real estate involved herein, while not specifically listed as an asset of the bank, was carried as "date paper," "date paper" being defined by the witness McGurk as paper that was due from the date it was given. The evidence further shows that funds of the bank were placed in the John S. McGurk trustee account that were not obtained from the liquidation of the purchased assets of the old Security State Bank. We are convinced, after a reading of the record, that all of the $181,502.37 of assets purchased of the insolvent Security State Bank were the property of the South Omaha State Bank. It is clear that the directors' note of $89,430 was given to show the extent of the personal liability of the directors on this paper and to show the amount that the discounted assets was to represent as approved assets in the new South Omaha State Bank. We conclude therefore that the whole of the $181,502.37 of purchased assets was at all times the property of the bank.

The contention is made that the John S. McGurk trustee account was composed of earnings and profits of the corporation and was therefore the property of the stockholders, as distinguished from that of the bank. In *State v. Nebraska State Bank,* 123 Neb. 289, 242 N. W. 613, this court said: "Earnings and profits in the possession of a corporation belong to the corporation the same as the property general-

ly, and for this reason there is nothing due and owing a stockholder from the profits as a matter of debt, until a dividend is declared in some appropriate manner." In the case at bar, the fund has been used since its inception for the use and benefit of the bank. The assets that were liquidated to provide the fund were purchased by the bank and there is no evidence in the records of the bank tending to show any one else as the owner. There has not been such a severance of the John S. McGurk trustee account from the assets of the bank that would warrant a finding that the fund had become the property of stockholders.

The witness John S. McGurk was the president, managing officer, a director and largest stockholder of the South Omaha State Bank. Clara B. Wells was the mother and W. A. Wells the stepfather of John S. McGurk. It appears from the record that in December, 1929, John S. McGurk was negotiating with the other stockholders for the purchase of their stock. At the same time, McGurk requested a loan from the defendant W. A. Wells which Wells refused. On December 23, 1929, McGurk wrote W. A. Wells, in part, as follows: "It takes $35,000 for my share down here, and if I can have mortgages for that amount, I'll turn them into our note case here." On December 28, 1929, W. A. Wells mailed three real estate mortgages to McGurk of a total face value of $35,000, each of the notes being indorsed in blank. McGurk immediately executed and delivered his personal notes to W. A. Wells for the amounts of the notes and mortgages sent to him. The record further shows that on December 10, 1929, the bank voted to purchase the assets of the South Omaha Safe Deposit & Loan Company as of December 31, 1929, at which time the stockholders were to sell their stock in the bank to McGurk. McGurk, the only stockholder, on December 31, 1929, paid a stockholders' assessment in the amount of $32,581.82, which was paid by placing the three mortgages obtained from W. A. Wells in the bank. Property of the bank was used to purchase the assets of the South Omaha Safe Deposit & Loan Company, and the stock owned by the other stockholders in the South

Omaha State Bank was purchased by McGurk by assigning his stock in the South Omaha Safe Deposit & Loan Company to them as a consideration therefor. When the assessment was made, the stockholders became personally liable for its payment, and when McGurk became the only stockholder with the assessment unpaid, he became personally liable for the whole amount thereof. It is clear therefore that the three mortgages obtained from W. A. Wells were used to pay the assessment that had been levied against McGurk personally as the only stockholder. They were therefore used to pay McGurk's personal obligation.

The defendants contend, however, that the loan was made to the bank. The transaction was wholly between McGurk and his stepfather, Wells. The letters of McGurk clearly indicate that he wanted the loan to apply on his indebtedness and not that of the bank. McGurk offered in the first instance to give his personal notes to Wells if the loan could be made, and when the notes and mortgages arrived, he immediately forwarded his personal notes to cover the amount thereof. Under these circumstances, we are convinced that the loan was one to McGurk personally and not to the bank.

It is true that the bank on December 31, 1929, had deeded the Higgins property in suit to Daphne S. McGurk, the wife of John S. McGurk, for a stated consideration of one dollar. On January 18, 1930, it was deeded to the defendants Wells. It is the contention of defendants that this was the individual property of the McGurks and not of the bank. While it is true that the bank had purchased the note and mortgage on the Higgins property for $1,250, subject to a first mortgage of $3,500, and had subsequently paid off the first mortgage, the defendants claim that the bank was repaid from the excess collected from the old Security State Bank assets over and above the $89,430 value at which they were carried in the South Omaha State Bank. But we have already determined that the whole of the assets purchased for $89,430 was at all times the property of the bank. The purchase price of the Higgins property, and the mortgage

thereon as well, were therefore paid by the bank and not McGurk. It was therefore bank property and not that of McGurk when it was transferred by the South Omaha State Bank to Daphne S. McGurk. It was still the bank's property when Daphne S. McGurk and John S. McGurk conveyed it to the defendants. It goes without saying that the president or other officer of a bank cannot secure or pay his personal obligations with the property of the bank.

Defendants contend that, when McGurk paid the $32,-581.82 assessment with the mortgages obtained from defendants, he had a right to take out doubtful assets that the assessment was put in the bank to replace. In the first place, the assessment was made to provide $5,000 additional surplus, $20,000 to reduce the bond account and $7,581.82 to add to the reserve for guaranty fund assessment. It was therefore not even contemplated that doubtful assets were to be taken from the bank when the assessment was made. There being no special arrangement made to substitute the assessment for bad or doubtful paper, the stockholders have no rights therein by operation of law. *Proctor v. First Nat. Bank,* 194 Wis. 20, 215 N. W. 438. In *McCann v. First Nat. Bank,* 112 Ind. 354, 14 N. E. 251, the court said: "If the stockholders had submitted to the proposed assessment of their stock, and paid in the $75,000 instead of reducing the capital stock, it would hardly be claimed that they would have become entitled to take or receive from the bank an equal amount of its suspended assets; nor can we perceive any reason why they should have become entitled to them because they elected to reduce the capital stock. * * * The bank held its suspended bills under the same authority, and charged with like obligations in respect thereto, as measured its rights and duties in respect to other assets."

We conclude, therefore, that the trial court was right in holding that the property in suit was the property of the South Omaha State Bank, and that the loan of $35,000 made by the defendants was to McGurk personally and not to the bank. The trial court rightfully canceled the deeds

from the South Omaha State Bank to Daphne S. McGurk, and from Daphne S. McGurk and John S. McGurk to the defendants Wells, and rightfully quieted the title to the property conveyed thereby in the receiver of the South Omaha State Bank.

AFFIRMED.